### UTICA DROP FORGE & TOOL CO. v. IRVINGTON MFG. CO.

(Circuit Court, D. New Jersey. May 15, 1911.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PLIERS.
    The White patent, No. 794,064, for a pliers, adapted for use in building and repairing wire fences, was not anticipated, and is valid, although the claims must be narrowly construed in view of the prior art. Also *held* infringed.

In Equity. Suit by Utica Drop Forge & Tool Company against the Irvington Manufacturing Company. On final hearing. Decree for complainant.

Martin & Jones, for complainant.
George L. Wheelock and Emerson R. Newell, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CROSS, District Judge. In this case the bill of complaint charges the defendant with infringement of patent No. 794,064, issued July 4, 1905, to one Hubert L. White, and duly assigned by him to the complainant. The patent is for an improvement in pliers, adapted for use in building and repairing wire fences. The only real question in the case is the validity of the complainant's patent, if that be sustained infringement must be found, since the defendant's device is exactly like the commercial form of the complainant's. In respect of infringement there is, however, one matter which should be alluded to. It appears that 12 or 13 years prior to April, 1909, the complainant had, as its selling agents, in New York City, a corporation known as the Smith & Hemenway Company; that at that time one Landon P. Smith was the president of the company; that on the 1st of April above mentioned the relationship between that company and the complainant ceased; that subsequently and during the summer or fall of 1909 the defendant placed its infringing device upon the market, of which the Smith & Hemenway Company were the selling agents. It also appears that the same Smith who was president of that company is the vice president of the defendant company, and as such verified the answer for it in this suit. These facts should tend to cause a court of equity to be especially careful to protect whatever rights, if any, the complainant may have in the premises.

The patent in suit has three claims as follows:

1. "The combination in a pliers of a pair of similar jaws having transverse broad ends and points or projections, 3, 3, of outer corners of the jaws, and, 5, in the middle of the end, and outwardly standing from a direct line between points, 3, 3, substantially as set forth."

2. "The combination in a pliers of jaws, each having broad ends, and a central rib on said ends, and each having the projecting points, 3, 3, at the corners, and, 5, on the rib, substantially as set forth."

3. "In a pliers, the combination of opposing jaws, each having three projecting ribs, forming fulcrums, and having opposing holding-points on the meeting ends of the ribs projecting beyond the faces of the respective jaws, substantially as set forth."

The device itself is simple, and does not show any great advance over the prior art; it nevertheless is effective, and has met with a very large sale. Thus we find that the complainant's sale of pliers made under the patent in suit for the year 1906, amounted to 62,063; for the year 1907, to 51,591; for the months from March to December, inclusive, in 1908, to 39,466; for the year 1909, 33,044; and for 1910, from January to August, inclusive, 19,792. The improvement in the pliers of the White patent relates to the construction upon the meeting portion of the jaw of projecting points or teeth, adapted to be used in extracting fence wire staples from fence posts. The patent calls for such points at each of the outer corners of the jaws and also in the center thereof; that is to say, each of the jaws of the pliers has on it three points with more or less extended grasping surface, which are adapted to register with each other when the jaws are closed. Another feature of the patent is that the jaws are rounded or crowning, or, adopting the language of the specification, "the jaws are made comparatively broad transversely as shown particularly in the end view in figure 3, and are made rounded or crowning as shown in this and

other figures." At another place in his specification, the patentee says that "on the broad face end of the jaw, there is provided a raised, or projecting surface or rib, 4." From these expressions it is manifest that while he contemplated what might be called, and what he did call, a rib, he also considered that that rib might consist merely of a raised or projecting surface having its apex at the center of the face of the "rounded or crowning" portion of the jaws. The defendant insists, however, that in view of the prior art the complainant at the best can only claim novelty for its device in case there is a rib actually constructed and outstanding on the broad face of the tool, on which rib the center tooth must be located. All other features of the patent are claimed to have been anticipated by the prior art. Before dealing with that question, it should be noted that all of the claims are for a combination, hence, while, taken singly, all of the elements of the combination may be old, the combination itself may be new. The patents mainly relied upon to show anticipation will now be considered. The Russell patent, No. 545,537, is owned by the complainant, which manufactured and sold under it large numbers of tools prior to the issue of the patent in suit. The Russell patent was not cited by the patent examiner as an anticipation, as it manifestly is not, although it has teeth at the outer corners of the jaws like those of the patent in suit. The center portion of its jaws where they register, however, is quite like that of an ordinary pair of pinchers, and is not adapted to, and could not be used to enter the eye or loop of a fence staple, for the purpose of drawing it. It cannot therefore, perform the function which the center tooth of the patent in suit performs. White is manifestly an improvement upon Russell. The Davis patent, No. 541,076, shows a tool with cutting jaws, having a single staple pulling tooth, located upon one side of the jaws. It does not have the centrally located staple-pulling teeth outstanding from the side teeth. The Musgrave patent, No. 561,337, shows a single center tooth, and apparently has small side teeth. The face of the jaws, however, is flat transversely, and the center tooth does not stand outwardly from a direct line between the side teeth. Musgrave, in other words, does not show a center pair of staple engaging teeth located as required by the patent in suit. A simple glance at the drawings of these patents, shows distinctive differences. The Krutsch patent, No. 600,082, also shows staple-pulling teeth, but the face of the jaws is shown to be flat transversely, and it contains nothing which corresponds to the outwardly standing central grasping teeth of the patent in suit. The Krutsch patent is more like the Russell patent than the White patent. The Cottrell patent No. 724,669, has central staple-pulling points or teeth, but does not have the corner teeth. The specification described the points which the defendant's expert claims are corner teeth, as the plier portion of the jaws, and it is denominated in the specification of the patent as a flat portion adapted for use as pliers for pulling wire taut. The teeth, if they can be called teeth, shown at the corners of the jaws in the Cottrell patent, are not the equivalents of the grasping teeth of the patent in suit, and the same may be said of what is called the Sayre tool, which was offered in evidence. It has the center

teeth of the patent in suit, but no side-grasping teeth, or teeth designed for, or capable of performing the function of the side teeth of the White patent. Material alterations would have to be made in it before it could fully perform the function of the patent in suit.

These are all of the patents which seem to require consideration. It must be acknowledged that some of them closely approximate the patent in suit. The art previously to the White patent, had been quite fully developed, but among all of the devices referred to, I find no one which embraces the combination of the patent in suit, which is manifestly superior to them all. The combination pliers made under the White patent, advanced the art quite as much as did any of its patented predecessors, concerning which, apart from Russell, it may be added that it does not appear whether they were or were not successful. I have reached the conclusion that the patent in suit is valid, notwithstanding I had a different impression at the argument. The combination tool of the White patent seems well nigh perfect. The teeth are strong, sufficient in number, are properly and carefully disposed, and so arranged as to grasp and pull any fence staple. The specification shows the working of the combination. The claims, it is true, must be narrowly construed, but even at that the defendant has infringed them, and in view of the fact that the patent is of great commercial use and value, it is entitled to, and should be given, the presumption of validity which attaches to its issue.

The prayer of the complainant's bill will be granted, with costs.